May it please the Court, my name is Daniel Schneider, and I represent the plaintiffs Eric Hu, New York Drilling, and 888 Consulting Court in this appeal. Mr. Hu, who is here with us in the Court today, and a representative of New York Drilling, stand before you impacted men, not from a rising cost of material and labor or from healthy competition of fellow excavators, but because of discrimination by the City of New York, which has given them the reputation that the City and its agents, which apparently used to include, but was spearheaded by one of its Assistant Chief Inspectors, Dennis Burkhart, will come to harass any job that they are on. While my argument is fully briefed, the error of the District Court causes substantial damage over and above this decision, other than just by being incorrectly decided. It fosters a motivation for governments to be opaque, to obstruct investigations, bring darkness where transparency is preferred, prevent the release of information, to work to run out the clocks of statutes of limitation, and to deny people their day in court. You made this argument in the brief, and I'm just trying to understand how it works. Is what you're really objecting to something that has to do with the way the City has dealt with the FOIL litigation? Well, Your Honors, so this is actually what I want to focus on, because the District Court did dismiss my case with prejudice based on the fact that, well, after admitting in our court conference that repleting might not be futile. Now, we do believe that we — Wait, wait, wait. I mean, I want to understand exactly what you're arguing. Sure. It's one thing to say whether repleting now would be futile. I mean, it's one thing if you're arguing to us that it shouldn't have been dismissed without prejudice, because you have information, and you could now file an amended complaint that would not be subject to whatever rigors of the District Court's analysis. But that's different from saying it should be not dismissed at all, or should be dismissed without prejudice to a complaint that might be filed someday, depending on the outcome of FOIL requests that are subject to litigation. Or the — or another alternative would to be order — to order jurisdictional discovery. And yes, Your Honor, you have correctly identified — I'm still not — why would it be — it's not a jurisdictional question. Well — It's a question about is the complaint adequate. That's — and one argument I assume you're making is that a complaint is adequate as it stands. Yes. And there's another argument that if it's not adequate as it stands, give us a chance to replete because we've got more information we can give you. But then there's a third argument that has to do with give us a chance to exhaust remedies in other litigations going on elsewhere that might give us information that would then enable us to file an amended complaint. Well, Your Honor, I — answering your question about numbers 2 and 3, I think that they're somewhat merged because we — we do not have the information we need because the city has slow-walked the disclosure of information for our investigatory efforts. We filed our case believing that we had enough information to survive a motion to dismiss. We had — But you're seeking to survive a motion to dismiss on the basis of the fact that something is bound to turn up in — under the FOIL request. So — And that — and the city must be slow-walking this because they don't want to reveal to you that you really do have a claim. Well, answering it in two ways — answering your question in two ways, we believe we have enough as it stands. However, in the event that we — in the event that we don't, yes, we believe that the city is slow-walking our claims. One FOIL request, which is still pending in an Article 78, dates back to February 2017. The other one, we haven't received a single document. And that FOIL was over a year old and which was a result of submissions by the city in — in their motion to dismiss. But this isn't a FOIA appeal. This isn't — you didn't ask the district court to take what — I don't know why it's jurisdictional. I agree with Judge Lynch, but discovery. I just don't — aren't we here on the question of whether your complaint fails to state a cause of action or not? We are here on whether this — we are here — the case was dismissed for failure to state a cause of action, but we are here on the judge's decision to dismiss it with prejudice. You didn't ask her to re-plead, did you? We — You did, obviously, in a pre-filing. Right. We — well, she dismissed with prejudice. We filed a timely notice of appeal, and we asked for that timely before this Court. I didn't know this before I got ready for this argument, but there's a lot of Second Circuit case law that says that if you don't ask to amend your complaint, you can't raise that. Well, Your Honor, I believe that is in our papers. The — during our — during our pre-motion colloquy with the judge, we had a long discussion about this being the last and best complaint. Okay. The judge herself said, and this is in page 194 of our appendix, that if no other new facts come to light, of course you can re-plead. So I agreed in that colloquy, based on — based on that stipulation, that this was — that this was going to be my attempt at a complaint. So we re-pled once, and the judge dismissed our case, and we filed our notice of appeal. But I'm — so that's puzzling me. Yes. And I hope you're going to get to defending the complaint that you've got, because I think that's the principal issue here. But it sounds to me like you are essentially conceding that this was, as of the time, the best you can do, that you're not saying you've got in your pocket five facts that you should have pled, could have pled, will plead. You're really relying on the third argument, that we should speculate about — A, about how this FOIL litigation is going to turn out, and B, based on your representation, draw conclusions that the city is somehow behaving inappropriately in FOIL litigation in the State courts that we don't know anything about. Well, that — that's — it's true that we're talking about — that we're talking in an ancillary fashion about Article 78s in the State courts, which is not before Your Honors. That is true. However, it does go to the question of what the city can do in order to run out the clock and not give litigants their day in court. Our position is, is that if — if this conduct is allowed, you know, indeed, how are litigants supposed to get into court if they cannot do their investigations within the statute of limitations? What conduct you're even talking about? They didn't — they apparently did not respond in a timely way to a FOIL request. There are remedies for that in the State courts. The State courts are sometimes very slow. I mean, those are all facts of life. But I don't understand how we can draw any conclusions about the city somehow undermining things. There's a complaint before us. There is a complaint. It's either a good complaint, in which case you should proceed to discovery, and life goes on, and we rehearse the decision of the district court. Yes. There's a secondary potential issue about whether you can file an amended complaint, but I haven't heard anything to suggest that you actually could do that, and there was this whole discussion about this is your last shot, so you presumably included all the facts you had. So, you know, again, I wish you would get to the complaint. I absolutely am going to get to the complaint. Well, but you've also invested your time. Right. So it's up to the presider whether you're going to get more, but so far we haven't heard anything about the complaint. Well, the complaint does state causes of action. You allege a pattern of harassment, okay? And how do you get them an out claim? Where's your allegations of widespread? How do I know how many inspectors are in the city versus how many are involved in your case? Is this five involved in all these bad facts? Are there 500 inspectors? Is that widespread? Well, it's widespread insofar as Mr. Hu had a meeting with the, with the, excuse me, with a deputy bureau chief of the DOB, and he complained about this specific inspector. And he was told that this inspector was going to be let keep doing what he was doing because he was good for revenues. That, I believe, that is a, I believe that that's someone with the power to make decisions that said that this conduct is going to be supported. Even if it's by one person, I believe that. But you allege in your complaint that the commissioner was the one vested with the power to make policy, not the fellow that was met in that meeting. Well, the commissioner, the commissioner appoints the deputy bureau commissioners, and Khalid at the time, at the time that we brought this lawsuit, was no longer with the Department of Buildings. So the deputy commissioner stands in the shoes of the prior, of the prior people who make policy. You've reserved a couple minutes for rebuttal. We'll hear you then. Okay. Thank you. Oops, sorry. May it please the court, Antonella Carlin for the city. The district court correctly dismissed the complaint. Plaintiffs bring a number of claims premised on their allegation that a DOB inspector targeted them because of racial animus generally and personal animus towards Hughes specifically. But the specific claims they bring require more than just allegations of animus. So for start, sorry. Sotomayor, you'll concede that they have alleged animus. They quote him as saying that he was put out of business because of Asian contractors and therefore he needs to get his own back. We don't contest that the complaint alleges both personal animus towards Hughes and discriminatory animus. But we do think that it fails to state a claim because, for example, the selective enforcement claims, plaintiff was required to plead sufficient comparators. I think it would be easiest to just go through the enforcement actions that they allege in the complaint. I'd like to get to one of the comparators also. Okay. But the pattern of harassment claim doesn't need these really closely correlated comparators, right? I mean, why haven't the plaintiffs here pled a pattern of harassment? There's pages of things, statements made, conduct undertaken, going out of the area they're responsible for. Why isn't that a pattern of harassment of these plaintiffs, at least alleged? Are you talking about for substantive due process? Yes. So for substantive due process, you have to allege that there is a campaign of harassment that is intentionally designed to drive you out of business, that so, like, the intentionality would be that you are doing illegal things to drive someone out of business or you're using your legal authority for ulterior reasons. And here you have a misunderstanding. I thought that there were various theories of due process pled by the plaintiff. One was this driving out of business theory, but this also recognized in this Court's decision, Chaliff or Chaffess or something, I'm not going to say it wrong, which talks about a pattern of harassment that's race animus based. Don't we have that here? Or am I wrong? I'm unaware that he makes that kind of claim. I understood it to be a substantive due process based on his interest in his business. You go ahead, then. I'll check the record. But here, he goes on and on about this pattern of harassment, but when you get to the specifics, what he alleges is four enforcement actions taken against, well, actually three enforcement actions taken against New York Drilling and one taken against another party over the course of two years. And that hardly constitutes, despite the conclusory statements of a campaign of harassment, that hardly constitutes a campaign of harassment, not to mention the NOVs that were issued where he doesn't dispute that they were upheld. So it's not someone intentionally going and finding things unwarranted. But turning to the legs that he was going to shut down his business. He was going to shut down every one of Hugh's job sites. Why is it conclusory to say he goes out of his area of responsibility to go after Hugh? How is that conclusory? It's conclusory in the sense of, and then when you talk about the specific examples, it's three enforcement actions. They're not four comparators from the complaint. No, no, no. I'm not talking about the comparators. I'm talking about the specific enforcement actions taken against the plaintiffs. There are none that were taken against Hugh. There were three taken against New York Drilling over the course of over two years. How many do you need? I mean, with respect to New York Drilling, you have an inspector of concrete who is issuing a violation over a puddle of water. So it was for the excavation site, which the concrete unit deals with. The excavation site. Concrete goes into virtually every construction site. So, yes. This is a puddle of water. Well, it was for failure to drain excessive, the excessive water. And it was issued to New York Drilling Company. It had nothing to do with workers being in there. The allegation is that as soon as somebody else came, first of all, the allegation is that that is not a violation. And then that sort of backed up by the statement that as soon as a contractor of another race came on board, it was not a problem, even though Mr. Burkhart came by. So. The same puddle. Yes. Didn't issue a violation. So I think that maybe the complaint is a bit, the brief is a bit misleading. What the complaint alleges is that New York Drilling was at all times the general contractor on this site that had a puddle of water. That they were issued a notice of violation for failure to drain the water. They were given an opportunity to drain the water. At some later date, Burkhart came back to that same site that was still New York Drilling's site and did not issue them a subsequent notice of violation. By then, another contractor was at work who was not Asian. No. That's a separate comparator that they're talking about with Vera Foundation. But with respect to the standing pool of water, it's the same site. And they're saying, I think what they're saying is. There were white workers standing around the pool. The pool of water. At some later date. And that New York Drilling didn't get a subsequent notice of violation. But the violation had nothing to do with workers. It had to do with the fact that there was a pool of water that hadn't been drained. And it's. It was New York Drilling both times is the point. Same site. Yes. New York Drilling is actually alleged as an Asian-owned business? General contractor, I think. General contractor. Yes. Asian-owned general contractor. Yes. So it was always their site. So if anyone was going to get the second NOV, it would have been New York Drilling. No specific allegation that Mr. Hu was involved. None. On occasion one and not on occasion two. Yes. Nothing about. Can I come back to the question? Normally you need comparators because people who discriminate don't say they're discriminating, right? So you have to look at circumstantial evidence. And the circumstantial evidence comes in the form of X, who is of the disfavored group, has one kind of treatment. But A, B, C, D, and E, who are not of the disfavored group, get different treatment. Do we need comparators in a complaint where there is evidence that the inspector in question has made specific biased comments? Has specifically targeted Mr. Hu, for example? Has a picture of Mr. Hu on his wall? Has motives to, and these things may not be true, but they're alleged and they're specific factual allegations, not conclusory ones, that he has made these comments, that he has threatened to drive Mr. Hu and others out of the city, out of doing business in the city. Why do we need to get to the circumstantial evidence that, and we also know that Mr. Burkhart writes 63% of his violations to Asian businesses, and it's also alleged that he doesn't normally work in flushing. So at least that theory of why there's a disproportionate number of Asians is out of the operation. So I don't believe that it's actually alleged that he doesn't work outside of flushing, but putting that to one side, I think this isn't a Well, it's said that he goes out of his way, off his route, to flushing. And I think now that they have gotten some of the FOIL requests, they realize that there are no predefined routes. You're given complaints that you respond to, and if you live nearby, sometimes they try and accommodate it so certain inspectors will go to certain places more often than not, but there's no predefined routes. But putting that to one side, I think typically in an employment discrimination case, you have evidence that an adverse action was taken against you, and then the defendant will come, the employer will come back with evidence saying that it was an illegitimate action, and then you can show through comparators, whatever it may be, that no, no, no, what they're saying is actually not true. But here, that's not the kind of claim we have. It's a selective enforcement claim, which means that you specifically, the defendant's enforced against you specifically, different than they did another individual because of personal animosity in the case of Class I. What you're saying is there needs to be an objective element to the violation of selection so that if you have an inspector who admits openly that he's biased against some group, but in fact he applies the rules impartially, there's no violation. Because And they haven't shown that there is that kind of selective enforcement. Yes. Could I circle back to my question? I'm sorry. I think you responded that what cause of action wasn't in this case other than pursuing your chosen profession, i.e. being driven completely out of business. The district judge in page 20, and she starts at 19 discussing the due process claims, and she lists the first two. It's the one she calls alternatively the third one, which she says a plaintiff can make out a due process claim without meeting this requirement by showing, quote, a true pattern of harassment by government officials where the harassment is systemic and intentional. Tell me how this complaint doesn't allege a pattern of harassment by government officials that's systemic and intentional. I think no, I don't believe that three enforcement actions taken over the course of two years is systemic and pervasive harassment. What about a basic standard of plea? Yes. A lot of your cases are summary judgment cases. But just putting aside the cases, if you as the plaintiff know how many times you've been harassed. So you put it in the complaint, and if you put only three times, that means that you've been harassed three times, and that is not sufficient to state a substantive due process claim. Is really what you're saying something like they need to say at least something about what a typical rate of violations might be for contractors? Because although this is totally outside the record or the complaint, I would be surprised if contractors in the city of New York don't wind up getting lots of, it's like parking tickets. They get lots of notices of violations. So you have to judge three or four in two years against some kind of backdrop before you conclude that that's harassment, especially if the three or four are all sustained by the impartial hearing officers. Yes, that's exactly what I'm saying. Also, the due process claim fails for much of the same reason. And in addition, they were given due process in oath hearings and Article 78. And if there are no further questions, we'll rest on our brief. Thank you. Okay. Thank you, Your Honor. Just a brief response just to get back to the objective standard. I believe that we did allege that in our complaint, and that goes into our standard of pleading argument with respect to the standard of pleading being, by the district court, being too high. We did we. Let's go to Judge Hall's question. Certainly the complaint alleges in conclusory terms, which I take it to mean it says this, that there is a pattern of persistent harassment. Yes. But the specific example, we're really short on specific examples, right? There are only four or five over a several-year period. Taking both complaints together, there are a maximum, I think, of five different incidents of write-ups. Well, the complaint, well, that bears, the complaint explicitly says that these are examples. The question I would ask the Court is how many is necessary to have sufficient comparators or to show that we have... Excuse me. Forget the comparators. I'm just focusing on what happened to Mr. Hu, the Shin interests, and New York Drilling. They all know, presumably, how many write-ups they've gotten, and I'm just wondering, it's not a question of how many is necessary or what needs to be described in detail, but at least if these are examples, they're examples of how many. If you said somewhere in the complaint there have been 30 of these, there have been 15, there have been six, there have been whatever. I believe the term that we used was numerous. The New York's, this is outside the record, but the New York City website does list all notices of violation, and you can do a listing by contractor, and there were hundreds. So, but... It would be nice if that was in the complaint, but you're representing that if we went to that website, we could see literally hundreds of violations issued to these plaintiffs. Absolutely, and the objective... Would that indicate that the inspector involved was Mr. Burkhart? In typical cases, yes. You can see the actual ticket, and Mr. Burkhart was involved in a ton of them. And, by the way, as alleged in our complaint... There's an allegation that he actually tried to cover up his involvement in some instances by coming, noting the violation, and sending somebody else to actually write it up. You took the words right out of my mouth, Your Honor. And there's allegations that he went, obviously, as noted correctly by Your Honors, that he went out of his roots and regions, that he had specific bias, and that he would use overtime. As evidenced by this submission by the city on their motion to dismiss, it showed that he worked an entire day, double-billed for lunch, and then went to Flushing to give violations. That was presumably overtime. That was not you. Now, if the number of violations on the website was sufficiently numerous, then it would establish the principle not favorable to you at all, that knee New York drilling and Mr. Hu get violations because they violate the regulations. Well, I think that that's best responded to by one of the examples in my complaint, where Mr. Hu, this is the example where Defendant Imran was sent to give the actual violation for failure to have plans on site. This was on 162nd Street. And what happened was Mr. Burkhart shows up. The DOB is a complaint-driven agency. They have so much volume that they go by 311 complaints. He shows up based on some pretextual excuse, starts jawing with Mr. Hu once he shows up. Excuse my informal language. And then when Mr. Imran comes, the only violation they are given is failure to have plans on site, even though he was shown plans. That was ultimately dismissed. But this shows the problem with this system where there was a stop work order imposed that literally took months to lift based on a violation that was ultimately dismissed and there was no violation given. Right. But responding to your question. Of course. Thank you. Thank you both.